* * * * * * * * * * *
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence or to rehear the parties or their representatives, the Full Commission affirms with modifications the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following stipulations which were submitted by the parties:
 STIPULATIONS
1. On the relevant dates herein, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On the relevant dates herein, an employer-employee relationship existed between plaintiff-employee and defendant-employer.
3. Dennis Insurance Group and the North Carolina Guaranty Association have been the carriers of workers' compensation insurance for defendant-employer on all relevant dates.
4. Plaintiff sustained an injury to his left wrist as the result of an accident that arose out of and in the course of his employment with defendant-employer on 11 September 1999.
5. Plaintiff's average weekly wage is $400.02 and his compensation rate is $266.68 of which $81.24 per week goes toward the payment of plaintiff's child support obligations, thus resulting in plaintiff receiving $185.54 per week in disability compensation.
6. Ongoing total disability compensation has been paid to plaintiff for the periods of 12 September 1999 through 5 June 2000, from 13 June 2000 through 20 June 2000, and from 27 February 2001 through the date of hearing and continuing.
7. At and subsequent to the hearing, the parties submitted the following:
 a. A Packet of Medical Records, which was admitted into the record, and marked as Stipulated Exhibit (2);
 b. A Packet of Industrial Commission Forms And Pleadings, which was admitted into the record, and marked as Stipulated Exhibit (3);
 c. A Packet of Vocational Rehabilitation Records, which was admitted into the record, and marked as Stipulated Exhibit (4);
 d. Plaintiff's responses to Defendants' First Set of Interrogatories and Request for Production of Documents, which was admitted into the record, and marked as Stipulated Exhibit (5);
 e. Plaintiff's responses to Defendants' Second Set of Interrogatories and Request for Production of Documents, which was admitted into the record, and marked as Stipulated Exhibit (6);
 f. Records from Carolina Finance, LLC, which were admitted into the record, and marked collectively as Stipulated Exhibit (7);
 g. BBT Bank Records for all accounts related to Plaintiff and Lesane Electrical, which were admitted into the record, and marked collectively as Stipulated Exhibit (8);
 h. A Copy of the Transcript of the 1 October 2003 Deposition of Plaintiff with attachments, which was admitted into the record, and marked as Stipulated Exhibit (9);
 i. A Copy of a Surveillance Video, which was admitted into the record, and marked as Stipulated Exhibit (10), and;
 j. A Packet of Truliant Credit Union Records was referenced at the hearing as Stipulated Exhibit (11). Subsequent to the hearing, the parties were unable to obtain these records, which are therefore, not part of the record.
8. The issues to be determined are as follows:
 a. Whether plaintiff's disability continues and/or whether he is totally and permanently disabled;
 b. Whether defendants made adequate efforts to rehabilitate plaintiff;
 c. Whether plaintiff has engaged in fraud pursuant to N.C. Gen. Stat. § 97-88.2;
 d. Whether plaintiff's workers' compensation benefits should be terminated or suspended;
 e. To what, if any, credit are defendants entitled for overpayment of plaintiff's disability compensation, and;
 f. Whether sanctions should be assessed against plaintiff.
 * * * * * * * * * * *
Based on the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner plaintiff was thirty-four (34) years of age, with his date of birth being 10 March 1971. Plaintiff began working for defendant-employer as a mason helper in approximately May 1999. Plaintiff has also held a license as an electrical contractor since March 1999 and owns and runs a business called Lesane Electrical.
2. On 11 September 1999, plaintiff sustained an injury while working for defendant-employer when scaffolding collapsed and dumped heavy material onto his left arm. Plaintiff fractured his left wrist. Defendants have admitted that this incident constituted an injury by accident arising out of and in the course of plaintiff's employment and accepted liability.
3. Following his injury, plaintiff received medical treatment from Dr. Arthur Carter, an orthopaedist. On the date of the incident, Dr. Carter performed an open reduction and internal fixation with implementation of hardware in plaintiff's left wrist. During this procedure, the distal segment of the ulnar bone was removed.
4. During the period of post-surgical recovery, plaintiff was paid by defendants temporary total disability compensation. These benefits were paid from the date of accident through the latter part of 2000 when plaintiff returned to work for defendant-employer.
5. While plaintiff's fracture was healing, the radius bone in his left arm and wrist drifted down so that it was shorter than the ulnar bone. During his deposition, Dr. Carter explained that typically the radius should be higher than the ulnar, but that the comminution, or shattering of the bone, and the healing process had caused it to drift.
6. On 1 March 2001, plaintiff underwent a second surgery performed by Dr. Carter to remove surgical hardware. On 21 June 2001, Dr. Carter excised a ganglion cyst and performed a tenolysis procedure on plaintiff's left wrist. On 5 November 2001, Dr. Carter opined that plaintiff had reached maximum medical improvement and restricted plaintiff from using saws or vibrating equipment and from repetitive, gripping motions and advised against returning to his job as a brick mason. Dr. Carter further opined that should plaintiff violate these restrictions, he risks causing further physical damage.
7. On 5 March 2002, plaintiff underwent a Functional Capacity Evaluation. Following this evaluation, Dr. Carter released plaintiff to return to work with additional restrictions of no lifting, pushing, or pulling greater than thirty pounds. Plaintiff has not sought further medical treatment since 5 March 2002 and did not immediately return to work. On 30 September 2002, Dr. Carter opined that plaintiff had sustained a forty-five percent (45%) permanent partial disability rating to the left hand.
8. Following the second and third surgical procedures in March and June 2001, plaintiff again was medically excused from work, and was paid by defendants temporary total disability compensation. Payments of indemnity compensation continued through the date of the hearing and until 10 May 2004, when plaintiff returned to suitable work for a different employer earning greater wages than he earned at the time of his injury.
9. On 26 August 2002, plaintiff underwent an independent medical examination by Dr. Mark Warburton. Dr. Warburton did not express an opinion as to when plaintiff reached maximum medical improvement, but did opine that plaintiff had sustained a twenty-five percent (25%) permanent partial disability rating to the left hand.
10. Because of the time period he provided treatment to plaintiff and the type of treatment he provided, Dr. Carter's is opinions regarding when plaintiff reached maximum medical improvement and the extent of plaintiff's permanent partial disability are given greater weight than the opinion of Dr. Warburton. Moreover, there is no competent medical evidence of record upon which to average the two assigned ratings.
11. As the result of his 11 September 1999 injury by accident, plaintiff reached maximum medical improvement on 5 November 2001, was released to return to work with restrictions on 5 March 2002, and sustained a forty-five percent (45%) permanent partial disability rating to the left hand.
12. Between 5 March 2002 when he was released to return to work and 10 May 2004 when he returned to work earning greater wages, plaintiff received one hundred thirteen and four sevenths (113 4/7) weeks of disability compensation.
13. On 25 February 2004, defendants filed an Industrial Commission Form 24 Application to Terminate or Suspend Payment of Compensation, and requested a full evidentiary hearing. Defendants contend that plaintiff was working while receiving total disability compensation and was not disabled. At the hearing, plaintiff testified that he had not earned any wages since 11 September 1999 except during the periods of 6 June 2000 through 12 June 2000 and from 21 June 2000 through 26 February 2001. During his pre-hearing deposition plaintiff testified that he had not worked or earned wages at any time while receiving disability compensation. Also, at his deposition plaintiff testified that the last time he performed any electrical work was in 2001, and in response to interrogatories, denied being self-employed or earning wages. On 26 March 2003, plaintiff completed an Industrial Commission Form 90 by which he certified that he did not receive any wages and did not work for a business or person during the period of 23 September 2002 through 6 February 2003. Plaintiff then completed a second Industrial Commission Form 90 on 1 October 2003 by which he certified that he did not receive any wages and did not work for a business or person during the period of 30 October 2002 through 1 October 2003.
14. In his answers to defendants' interrogatories, plaintiff denied that Lesane Electrical had any bank accounts and declared that the company had not had any accounts since January 2000. However, bank records which are part of the record of evidence establish that plaintiff opened a bank account with Branch Banking and Trust (BBT) on 4 May 2001 under the name Virgil T. Lesane d/b/a Lesane Electrical. These BBT bank records confirm that Lesane Electrical has been receiving payment for electrical work since at least 9 March 2001. These BBT bank records also show that plaintiff has withdrawn money from the Lesane Electrical bank account since at least 2001 to pay for personal items, including loan payments on his personal automobile, telephone service, meals, and a vacation rental property in Florida. Moreover, plaintiff's bank records and testimony unequivocally establish that his regular monthly expenditures far exceeded the amount he has received in workers' compensation disability benefits.
15. On 19 December 2002, plaintiff completed a loan application for the purchase of a 1999 Chevrolet pickup truck. On the application, plaintiff noted that he was employed as an electrician and was earning more than $40,000.00 annually. At the hearing, plaintiff testified that what he meant by that representation was that he anticipated making more than $40,000.00 once he went off workers' compensation. Plaintiff further testified that his wife and her earnings would be assisting him in making payments on the truck.
16. Regarding his physical condition and ability to work, plaintiff testified that he did not perform any work for Lesane Electrical. However, a surveillance video shows plaintiff performing some work as an electrician and carrying lumber, a task that he had previously specifically denied performing.
17. Mr. Roosevelt Nixon testified that plaintiff would occasionally act as his contractor and that he would perform subcontract work under the license of Lesane Electrical. Mr. Nixon explained that he could not secure the jobs on his own because he, unlike plaintiff, was not a licensed electrician and could not obtain the necessary permits. Additionally, Mr. Nixon testified that plaintiff occasionally assisted him with physical labor.
18. Regarding plaintiff's physical abilities, what is shown in the video and the work Mr. Nixon described plaintiff performing directly contradicts some of plaintiff's testimony. As for Mr. Nixon and other subcontractors of Lesane Electrical, plaintiff testified that he secured permits for friends and even persons that he did not know so that they could perform electrical work and that he received no payments or financial benefit. Based upon the entire record of evidence, plaintiff's testimony in this regard is not found to be credible. Substantial sums of money was deposited into the BBT account of Lesane Electric from 2001 through 2004, and plaintiff's spending habits indicate that he received payments or a financial benefit from the business arrangements involved.
20. Based upon the totality of the credible evidence of record, the Full Commission finds plaintiff had wage earning capacity as of 5 March 2002, when he was released to return to work and that plaintiff was working in his own business as of 5 March 2002. The type of work plaintiff did in his own business was indicative of his capacity to earn wages in the competitive marketplace.
21. Given that as of 5 March 2002 plaintiff had some wage earnings capacity, he was obligated to elect between compensation under N.C. Gen. Stat. § 97-30 or N.C. Gen. Stat. § 97-31. The Full Commission is unable to compute based on the evidence presented, the amount of wages plaintiff earned after 5 March 2002. Plaintiff has the burden of proving disability and the extent of his disability as compensability was admitted pursuant to a Form 60. Therefore, compensation under N.C. Gen. Stat. §97-31 is deemed to be more favorable to Plaintiff.
 * * * * * * * * * * * CONCLUSIONS OF LAW
1. On 11 September 1999, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. As a result of his 11 September 1999 injury by accident, plaintiff was totally disabled and unable to earn wages in any employment for the period of 11 September 1999 to 5 March 2002 except for brief periods as set forth in the Stipulations. N.C. Gen. Stat. § 97-29. Plaintiff has been paid by defendants the correct amount of indemnity compensation for this period. Id.
3. Based upon the totality of the credible evidence of record, the Full Commission concludes that plaintiff had some wage earning capacity as of 5 March 2002 and was no longer totally disabled. N.C. Gen. Stat. § 97-30; Russell v. Lowes ProductDistribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993). Plaintiff is deemed to have elected the more favorable remedy between compensation under N.C. Gen. Stat. § 97-30 or N.C. Gen. Stat. § 97-31. As the result of his 11 September 1999 injury by accident, plaintiff would be entitled to be paid by defendants permanent partial disability compensation at the rate of $266.68 per week for a period of ninety (90) weeks for the forty-five percent (45%) rating to his left hand. N.C. Gen. Stat. §97-31(12). Since plaintiff had some wage earning capacity at the time he was released to return to work and did earn an undetermined amount of income while working in his own business and using skills that would be marketable in the competitive workplace, plaintiff was no longer totally disabled as of 5 March 2002. Compensation under N.C. Gen. Stat. § 97-31 would be the more favorable remedy. Defendant is entitled to a credit for compensation paid to plaintiff in excess of ninety (90) weeks, which amounts to twenty-three and four-sevenths (23 4/7) weeks of overpayment.
4. As a result of his 11 September 1999 injury by accident, plaintiff is entitled to have defendants pay for all related medical expenses incurred. N.C. Gen. Stat. §§ 97-25; 97-25.1.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for compensation for total disability under N.C. Gen. Stat. § 97-29 after 5 March 2002 is Denied.
2. Defendants shall pay to plaintiff permanent partial disability compensation at the rate of $266.68 per week for a period of ninety (90) weeks for the forty-five percent (45%) rating to his left hand beginning 6 March 2002. Since defendants are entitled to a credit against the amount of permanent partial disability benefits awarded herein for payments of total disability compensation to plaintiff subsequent to 5 March 2002, no permanent partial disability is owed to plaintiff.
3. Plaintiff's attorney is awarded a fee of twenty-five (25%) of the compensation due plaintiff.
4. Defendants shall pay for all related medical expenses incurred by plaintiff as a result of his 11 September 1999 injury by accident.
5. Defendants shall pay the costs.
IT IS FURTHER ORDERED that defendants' allegations of fraud shall be addressed by the Industrial Commission Fraud Investigations Section. However, either party may move to reopen this claim, if necessary, on the fraud issue.
This the __ day of October, 2006.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
 S/_____________ PAMELA T. YOUNG COMMISSIONER